**MARITIME TRADING CO., Inc., v. J. M. PRESTON CO.**

District Court, E. D. Michigan, S. D. May 6, 1926.

No. 6918.

1. Sales ⬳273(1)—Seller of tile for grain bin, agreeing to furnish design and detailed drawings for construction, held to have impliedly warranted fitness of bins and design for use intended.

Seller, specializing in tile bins and material therefor, engaging to furnish design and detailed drawings, as well as material, for construction of certain grain bins, *held* to have impliedly warranted fitness of tile bins and design for the use to which they were to be put by purchaser.

2. Sales ⬳440(2)—Court, determining question of implied warranty, may inquire into circumstances surrounding execution of sales contract.

In determining whether or not there is an implied covenant of warranty in sale of goods, court is not limited in its consideration to exact terms of contract, but may inquire into circumstances surrounding its execution.

At Law. Action by the Maritime Trading Company, Inc., against the J. M. Preston Company. Judgment for plaintiff.

Simon Fleischmann and Martin Clark, both of Buffalo, N. Y., for plaintiff.

Goodenough, Voorhies, Long & Ryan, of Detroit, Mich., for defendant.

SIMONS, District Judge. This is a suit for damages arising out of a contract for furnishing tile bins for the storing of grain. The case was tried before a jury, but at the conclusion of the evidence motions were made for a directed verdict by both parties, and it was stipulated that the court should decide all disputed questions of law and fact, as though the case had been tried by the court without a jury.

In so far as the facts of the case seem undisputed, it appears that the plaintiff is a milling company located in Buffalo, engaged in the manufacturing of feed from various kinds of grain, and desired to secure a grain elevator consisting of a cluster of bins. The defendant is a Michigan company, specializing in tile bins and material for the same, and holding itself out by circular and otherwise that it would supply a full set of plans and instructions on how to build a silo when the material is shipped, and that it was ready to prepare complete working plans, if awarded order for material. In August, 1920, through a firm of building contractors, the Huntley & Derdenger Corporation, the defendant was asked to submit estimates on tile bins, and furnished estimates for tile for four circular bins and for various connector walls, and furnished blueprints showing the design of a cluster bin and detailed drawings of the connection between the walls of the circular bins and the connector walls. Subsequently a written contract was entered into between the parties, which contract contained, among other provisions, the following:

"Above contract is for steel and all blocks necessary for job, as your letter to Huntley

& Derdenger Company, dated August 12, 1920, tile bins to pass bureau of building, Buffalo."

Following the execution of this contract the plaintiff employed a mason contractor in Buffalo by the name of Ryan to build the cluster bins, in accordance with blueprints and detailed drawings furnished by the defendant, and in accordance with specifications prepared by plaintiff's architect. After the construction of the foundation, and before beginning the laying of tile, a representative of the defendant company brought a mason to the job, who laid out the first courses of tile, and subsequently an engineer of the defendant company inspected the job, although testimony of any conversations had with the engineer was excluded by the court, when it was found that this engineer had since died. Plaintiff paid for all tile and reinforcing rods furnished by the defendant, and paid for the construction of the bins. After being put into use, the bins failed. Leaks developed between the connector walls and the main bins; a portion of one of the connector walls collapsed, and it became necessary for the plaintiff to restore it. Subsequently various efforts of the plaintiff to shore up the bins by steel reinforcing rods proved inadequate. Plaintiff presented evidence of damage to include the original cost of the tile and reinforcing steel, the cost of construction both of foundation and bins, and various items of extras expended for waterproofing and efforts to repair the bins and make them serviceable, together with loss of the use of the bins.

Before considering the questions of law involved, it is necessary to make certain findings of fact in reference to such matters as are disputed.

### Findings of Fact.

(1) I find from the evidence that defendant was fully informed as to the use to which the plaintiff wished to put the bins, and that such use contemplated the storing of different grains in respective bins without allowing the grains to mix.

(2) That the defendant held itself out to be experienced in the designing of tile bins, and that the plaintiff relied upon such special knowledge.

(3) That the bins were constructed by the contractor, Ryan, in accordance with the plans submitted to the plaintiff by the defendant, and in good, workmanlike manner.

(4) That the bins as planned and constructed were not suitable to the use to which the plaintiff desired to put them, and that the device in material respects failed after being put in use.

(5) That, if there was a breach of contract by the defendant for which the plaintiff could recover damages, the plaintiff's damage, including the amount paid for tile and reinforcing rods, for construction, for repairing bins, for loss of the use of the bins, and for all items of damage proved by the plaintiff, except only the amount claimed by the plaintiff for delay in shipment, is the sum of $38,181.54.

### Conclusions of Law.

[1] The important legal question to be determined in this case is whether, under all of the circumstances of the case and in the construction of the contract between the parties, there was an implied warranty of the fitness of the tile bins for the use to which they were to be put by the plaintiff. It is contended by the defendant that the only thing it undertook to do was to furnish material, being tile of specified quality and reinforcing rods of specified size, and that it did not undertake to construct or superintend the construction of the bins, or to be responsible for the design. If defendant's contention as to the proper construction of its contract is correct, no warranty of fitness can, of course, be implied, because there is no claim upon the part of the plaintiff that intrinsically there was any fault either in the individual tile, or in the material from which the connecting rods were made. It is the plaintiff's contention that the entire design was faulty, and that it relied, and had a right to rely, upon the integrity of the plans submitted for the construction of the bins by the defendant.

A careful consideration of the contract as finally executed, together with a consideration of the plans submitted by the defendant company, and its reply to the Huntley & Derdenger letter, all of which were incorporated into the contract by reference, indicates clearly that the defendant obligated itself to do something more than to merely furnish material. It undertook to furnish a design and detailed drawings for construction. It knew the use to which the plaintiff expected to put the bins, and it undertook to furnish the design for the construction of such bins and the material necessary, so that the bins when constructed would be fit for the use intended. There can be no other construction of the contract, even when we exclude all testimony as to representations of the defendant, than that it undertook to guide the plaintiff in the construction of the bins by the submission of

plans and detailed drawings, and that it undertook a further obligation that the bins, when constructed, would pass the bureau of building of the city of Buffalo.

[2] In determining whether or not there was an implied covenant of warranty, it is my opinion that the court is not limited in its consideration to the exact terms of the contract, but may inquire into the circumstances surrounding its execution. This is clearly the holding of the United States Supreme Court in the leading case upon the subject, Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 S. Ct. 537, 28 L. Ed. 86, where the general principles underlying the law of implied warranties of fitness are ably discussed by Justice Harlan.

Of the many authorities referred to by counsel on both sides on the subject of implied warranty, the case that comes nearest to the case at bar seems to be that of Bird & Son v. Guarantee Construction Co., 295 F. 451, decided by the Circuit Court of Appeals of the First Circuit, and following the holding of the Supreme Court in Kellogg Bridge Co. v. Hamilton, supra. There, as here, it was contended that there was an express warranty which excluded all possibility of implied warranty, a contention which was held to be unsound. There, as here, it was contended that the employment of expert engineering advice by the plaintiff relieved the defendant of any responsibility which might be found to arise out of an implied warranty as to the functional efficiency of the thing sold. This contention was there held to be equally unmeritorious.

I find, therefore, as a matter of law, that the plaintiff is entitled to a judgment against the defendant for damages in the sum as found above, and judgment may be entered accordingly.